| | |
|---|---|
| **IRENE SCHNEIDER FAMILY TRUST,** et al., | : |
| Plaintiffs, | : UNITED STATES DISTRICT COURT |
| v. | :     DISTRICT OF NEW JERSEY |
| **PNC BANK, NATIONAL ASSOCIATION,** | :    Civil Action No. 23-3146 (ZNQ) |
| Defendant(s). | : |
| | :    **MEMORANDUM & ORDER** |
| | : |

**THIS MATTER** comes before the Court on a motion by Defendant PNC Bank, N.A. ("PNC") to disqualify Plaintiffs' counsel, Elias Schneider, Esq. ("Mr. Schneider") [ECF No. 13]. Mr. Schneider filed a Memorandum of Law in Opposition [ECF No. 14]. PNC filed a Reply Brief [ECF No. 16]. Thereafter, Mr. Schneider filed a "Waiver of Conflict of Interest" [ECF No. 19] in response to which PNC filed a Supplemental Memorandum of Law [ECF No. 20]. Finally, Mr. Schneider responded to PNC's Supplemental Memorandum [ECF No. 39].

During a telephone status conference with counsel on January 11, 2024, the Court inquired whether a plenary hearing on the questions posed by PNC's motion would be beneficial. PNC responded in the affirmative [ECF No. 41], Mr. Schneider in the negative [ECF No. 39].

The Court having considered the parties positions and concluding that a hearing could be helpful to the Court in reaching a determination on Plaintiff's motion, a plenary hearing was scheduled for January 25, 2024 [ECF No. 42]. On January 25, 2024, counsel for PNC appeared. Mr. Schneider did not. When reached by telephone, Mr. Schneider explained that there had been some confusion on his part concerning the hearing. The transcript of that proceeding speaks for itself. [ECF No. 47]. At Mr. Schneider's request, and with PNC's consent, the Court rescheduled the hearing to February 8, 2024 and the parties were directed to confirm their intention to appear by close of business on February 6, 2024 [ECF No. 45]. PNC confirmed. Mr. Schneider did not. Accordingly, the hearing was cancelled, and counsel was advised that the Court would decide PNC's motion based on the papers submitted [ECF No. 46].

**I. Background**

On April 27, 2023 Plaintiffs filed a Complaint against PNC in state court. The action was removed to this Court on June 8, 2023. On July 10, 2023, PNC filed its Answer and this Motion to disqualify Mr. Schneider.

1

The lawsuit was initiated by Mr. Schneider on behalf of several family trusts and individuals associated with those trusts, including Mr. Schneider himself. Plaintiffs allege that PNC, without proper authorization, used funds from one PNC account to satisfy amounts due on a different PNC account. Specifically, Plaintiffs allege that PNC improperly made withdrawals from the Harry & Irene Schneider Distribution Trust's checking account ("the 9228 Account") to satisfy overdue payments on Mr. Schneider and his wife's personal Home Equity Line of Credit account ("HELOC"). Mr. Schneider's brother, David, is the sole beneficiary of this Trust. Mr. Schneider is an authorized signatory on the 9228 Account. Plaintiffs further allege that PNC took this action pursuant to a setoff provision which they argue is invalid under public policy and New Jersey law. As a result of PNC's actions, Plaintiffs allege, the Trusts were unable to make mortgage payments on two properties owned by the Trusts resulting in tax liens being imposed against the properties. [ECF No. 8].

PNC denies Plaintiffs' allegations. More specifically, PNC asserts Mr. Schneider and his wife expressly authorized PNC, in writing, to deduct their HELOC payments from the 9228 Account. PNC denies and has not asserted that it exercised any right of setoff based on any deposit account agreement with any of the Plaintiffs. As such, PNC argues as follows:

> Put simply, PNC seeks disqualification because Elias [Schneider] instructed PNC to use funds from the 9228 Account, an account for which he was an authorized signatory, to pay his HELOC debt; now, however, Elias ignores the written instructions he gave PNC and alleges that PNC unilaterally setoff the 9228 Account to make HELOC payments under authority in the deposit account agreement. In essence, he contends that PNC took money belonging to [his brother] David and the Trusts. However, the HELOC application and the HELOC amendment signed by Elias and [his wife,] Cynthia explicitly instruct PNC to debit the 9228 Account to make payments on the HELOC. These written documents evidence that it was Elias and Cynthia, not PNC, who authorized the use of funds in the 9228 Account to make payments on the HELOC, which Elias admits were in derogation of the rights of David and the Trusts, whom he represents. This situation creates a clear conflict of interest.

ECF No. 16 at 7.

## II. Legal Standards

The Court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). In this District, questions of attorney ethics are governed by Local Civil Rule 103.1(a), which provides that the conduct of attorneys admitted before this Court shall be governed by the Rules of Professional Conduct ("RPCs") of the American Bar Association as modified by the New Jersey Supreme Court. *FMC Corp. v. Guthery*, 2009 WL 485280 (D.N.J. February 24, 2009). At the outset, it should be noted that "while efforts should be made to avoid inconsistent determinations under [New Jersey's Rules of Professional Conduct], and this Court may certainly look for guidance to the decisions of the New Jersey state courts, our Local Rules do not require

that this Court be bound by those decisions." *Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996). Additionally, "[d]isqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts." *Id.* (quoting *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F. Supp. 1121, 1124 (N.D. Ohio 1990)).

"It is well settled that because motions to disqualify can have such drastic consequences, courts disfavor such motions and grant them only 'when absolutely necessary.'" *Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001) (quoting *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J.1993)). Accordingly, "[a] party seeking disqualification must meet a 'heavy burden' of proof before a court will disqualify an attorney or law firm." *Id.* at 226–27 (quoting *Alexander*, 822 F. Supp. at 1114).

"[T]he ethical rules should not be blindly applied without consideration of relative hardships." *Gould,* 738 F. Supp. at 1124. When considering motions to disqualify, there will most likely be hardships for one client if their attorney is disqualified, as well as possible hardships for the other if the attorney is allowed to proceed against them. Thus, a delicate balance must be maintained between "the sacrosanct privacy of the attorney-client relationship (and the professional integrity implicated by that relationship) and the prerogative of a party to proceed with counsel of its choice." *Schiessle,* 717 F.2d at 420; *Carlyle Towers,* 944 F. Supp. at 345. Besides weighing these factors, the court must also consider its "obligation to maintain high professional standards and to ensure that the trial of the claims in the case will be free from taint." *Huntington,* 655 F. Supp. at 567; *see also Steel v. General Motors Corp.,* 912 F. Supp. 724, 733 (D.N.J.1995) ("Resolution of a motion to disqualify requires the court to balance 'the need to maintain the highest standards of the [legal] profession' against 'a client's right to freely choose his counsel.'"); *Carlyle Towers,* 944 F. Supp. at 345.

"Waiver is a valid basis for denial of a motion to disqualify." *Alexander*, 822 F. Supp. at 1115 (D.N.J 1993). The District of Delaware has addressed explicit waiver, stating that clients may "consent to conflicts, whether present or future" by executing a waiver, but "[t]he effectiveness of a waiver depends on 'the extent to which the client reasonably understands the material risks that the waiver entails.'" *In re IH 1, Inc.*, 441 B.R. 742, 746 (D. Del. 2011) (citing Model Rule of Professional Conduct 1.7, comment 22). "General and open-ended waivers are generally not effective." *Id.* "Comprehensive waivers are more likely to be effective, as are those agreed to by sophisticated clients." *Id.* At least one court in this District has previously adopted the reasoning of the Delaware court, along with the instruction provided in comment 22 to the Model Rules of Professional Conduct, in finding invalid a document purportedly waiving a conflict that sought "to hold harmless and indemnify [counsel] against any further action that may arise resulting from the prior transaction." *Fragoso v. Zhejun Piao*, 433 F. Supp. 3d 623, 631 (D.N.J. 2019). The court found this waiver to be "general and open-ended" as it did not "specifically identify the possibility of future conflicts." *Id.* at 630 (quotation marks omitted).

3

A. Relevant Rules of Professional Conduct

RPC 1.7 Conflict of Interest: General Rule

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;

(2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(3) the representation is not prohibited by law; and

(4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

Comment 22 to the Rules of Professional Condent, Consent to Future Conflict, instructs:

Whether a lawyer may properly request a client to waive conflicts that might arise in the future is subject to the test of paragraph (b) [of Model Rule of Professional Conduct 1.7]. The effectiveness of such waivers is generally determined by the extent to which the client reasonably understands the material risks that the waiver entails. The more comprehensive the explanation of the types of future representations that might arise and the actual and reasonably foreseeable adverse consequences of those representations, the greater the likelihood that the client will have the requisite understanding. Thus, if the client agrees to consent to a particular type of conflict with which the client is already familiar, then the consent ordinarily will be effective with regard to that type of conflict. If the consent is general and open-ended, then the consent ordinarily will be ineffective, because it is not reasonably likely that the client will have understood the material risks involved. On the other hand, if the client is an experienced user of the legal services involved and is reasonably informed regarding the risk that a conflict may arise, such consent

is more likely to be effective, particularly if, e.g., the client is independently represented by other counsel in giving consent and the consent is limited to future conflicts unrelated to the subject of the representation. In any case, advance consent cannot be effective if the circumstances that materialize in the future are such as would make the conflict nonconsentable under paragraph (b).

Comment 22 to Model RPC 1.7.

<u>RPC 3.7 Lawyer as a Witness</u>

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9.

**III. Analysis**

Mr. Schneider's conflict is as inescapable as it is obvious. His representation of his brother, and the Trusts as well as his wife and himself presents a clear conflict of interest and his opposition to PNC's motion on grounds of standing and waiver is unavailing.

In his opposition Mr. Schneider argues, among other things, that PNC lacks standing to seek his disqualification. ECF No. 14. To the contrary, non-clients have standing, through their attorneys, to raise issues concerning ethical violations by opposing counsel. *See Century Indem. Co. v. Congoleum Corp.*, 426 F.3d 675, 686-687 (3d Cir. 2005). In fact, this Court raised precisely the same issues presented by PNC's motion with Mr. Schneider during the initial scheduling conference on August 10, 2023.

On the facts presented, a clear and unmistakable "concurrent conflict of interest" exists by virtue of Mr. Schneider's representation of himself and his wife, whose interests are at odds with those of his brother and the Trusts inasmuch as the funds withdrawn from the 9228 Account were used to pay the Schneiders' personal obligations on the HELOC account. *See* RPC 1.7(1). Further, because PNC maintains the Mr. Schneider expressly authorized these withdrawals, he will necessarily be an important witness in the trial of this case. In addition to the prosecution of the factual allegations in Plaintiffs' pleadings, Mr. Schneider will have to respond to PNC's counterclaim for indemnification based on his alleged authorization of the disputed payments. In

his opposition papers, Mr. Schneider acknowledges that he expects to be Plaintiffs' "main witness", a problem he proposes to resolve by having his son, a lawyer in his office, conduct his examination. ECF No. 14 at 5. However, the Rules of Professional Conduct make clearly prohibit an attorney from acting as trial counsel when that attorney is also a material witness. RPC 3.7(a).

On August 4, 2023, Mr. Schneider filed a "Waiver of Conflict of Interest" [ECF No. 19] purportedly signed by Mr. Schneider's brother and co-Trustee, David Schneider. Notably, the execution of the Waiver was neither under penalty of perjury nor witnessed. In conclusory fashion, the Waiver states that David "understands any potential conflict of interest", "waives any conflict of interest", and "waive[s] having any independent lawyer review." *Id.* at 2.

In short, the Waiver proffered by Mr. Schneider is inadequate on its face under New Jersey RPC 1.7(B)(1) in several respects; it lacks a comprehensive explanation of the nature of Mr. Schneider's conflict, it mischaracterizes the nature of the conflict, it lacks an accurate factual description of PNC's allegations, it fails to reference the operative pleadings including the Third Amended Complaint, PNC's Answer and Counterclaim or the instant Motion.

Mr. Schneider's role as a material witness, coupled with his own potential exposure to liability for the claims asserted on behalf of Plaintiffs, would make his disqualification inevitable even in the face of a "full disclosure" under RPC 1.7(B)(2).

**IV. Conclusion and Order**

The Court has carefully considered the submissions of the parties and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons above,

IT IS on this 20th day of February 2024

ORDERED that PNC's motion [ECF No. 13] to disqualify Mr. Schneider as Plaintiffs' counsel is GRANTED; and it is further

ORDERED that Plaintiffs shall have 30 days to engage new counsel (or, as to any individual defendants only, advise the Court in writing that they intend to proceed *pro se*) or, alternatively, to amend their pleadings to resolve the conflicts discussed herein; and it is further

ORDERED that failure to meet the above deadline may result in dismissal of this action for failure to prosecute.

*s/Douglas E. Arpert*  
Douglas E. Arpert, U.S.M.J.

--terminates ECF No. 13