# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HARRY & IRENE SCHNEIDER DISTRIBUTION TRUST,** *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br>**PNC BANK NATIONAL ASSOCIATION,**<br><br>**Defendant.** | **Case No. 23–cv–03146–ESK–SAK**<br><br><br>**OPINION** |

**KIEL, U.S.D.J.**

    **THIS MATTER** is before the Court on the motions for summary judgment of defendant PNC Bank, N.A. (ECF No. 80) and plaintiff Elias L. Schneider (Elias) (ECF No. 92). For the following reasons, defendant's motion will be GRANTED IN PART and Elias's motion will be DENIED AS MOOT.[1]

---

[1] During the July 15, 2024 motion hearing, I stated that defendant was to file the initial motion for summary judgment followed by Elias's cross-motion. (ECF No. 88 (July 15, 2024 Hr'g Tr.) p.17:11–13.) The subsequent order approving the briefing schedule similarly contemplated that the individual plaintiffs would file cross-motions. (ECF No. 79 (Aug. 7, 2024 Briefing Order).) Elias thereafter separately filed his own motion and opposed defendant's motion. (ECF No. 92, ECF No. 94 (Pl.'s Opp'n Br.).) Pursuant to Local Civil Rule 7.1(h), "[a] party filing a cross-motion shall serve and file a combined brief in opposition to the original motion and in support of the cross-motion, which shall not exceed 40 pages." L. Civ. R. 7.1(h). Elias has failed to comply with the Local Civil Rules here. There is overlap in his two briefs, but they are not identical. I therefore resolve that ECF No. 94 is the operative brief because it most directly responds to defendant's underlying motion at ECF No. 80. *See Rialto-Capitol Condo. Assoc., Inc. v. Burlington Ins. Co.*, Case No. 19–12811, 2021 WL 5494372, at *1 n.1 (D.N.J. Nov. 23, 2021) (selecting the operative opposition and reply briefs due to the parties' failure to comply with Local Civil Rule 7.1(h)). Because I will ultimately dismiss Elias's claims, the motion at ECF No. 92 will be denied as moot. I will nonetheless refer to the filing at ECF No. 92 when it is useful to better understand Elias's general arguments.

## I.    BACKGROUND

### A.    <u>Facts</u>

This is a case with straightforward facts tangled only by its convoluted procedural history.    Because who may bring what claims in what capacity will be critical to my analysis, it is necessary to trace the parties' path to the pending motions.

On September 10, 2006, Elias and David Schneider (David) jointly applied for and opened a checking account designated for the Harry & Irene Schneider Distribution Trust (the Trust)[2] with defendant.    (ECF No. 80–2 (Def.'s Exs.) pp. 5, 45.)    Elias is an authorized signatory for the account.    (*Id.* p. 45.)

Elias and his wife Cynthia Schneider (Cynthia) maintain a home equity line of credit (HELOC) with defendant.    (*Id.* pp. 7–13, 45.)    On November 10, 2006, Elias and Cynthia applied for and executed an amendment to the HELOC.    (*Id.*)    The amendment includes a payment provision in which HELOC payments were to be automatically drawn from the Trust checking account.    (*Id.* pp. 7, 10.)    Elias thereafter received monthly account statements for the HELOC.    (*Id.* p. 46.)    In 2023, Elias first disputed the payments from the Trust checking account to the HELOC.    (*Id.*)[3]

---

[2] As explained in the third amended complaint, the Harry M. Schneider Family Trust and the Irene Schneider Family Trust operate as the Harry & Irene Schneider Distribution Trust.    (ECF No. 8 (Third Am. Compl.) p. 2.)    Therefore, I refer to the Trust as a singular entity.

[3] Elias claims in his responsive statement of facts that a branch officer told him in April 2023 that the bank exercised its right to set-off by applying funds from the Trust checking account to the HELOC and another representative confirmed the same over the phone.    (ECF No. 94–1 (Pl.'s Responsive Statement of Facts) pp. 5, 6.)    This assertion is not accompanied by a citation to the record.    The clearest support for this proposition is Elias's declaration accompanying his own motion, which makes a similar assertion as to the branch officer.    (ECF No. 92–3 p. 7.)    Though this declaration references 28 U.S.C. § 1746, it was not made under penalty of perjury and I do not consider it here.    *See Three Rivers Confections, LLC v. Warman*, 660 F. App'x 103, 107 n. 8 (3d Cir. 2016) (noting that the district court properly disregarded a declaration

### B.    Procedural History

The Trust, Elias as co-trustee, and David as co-trustee and beneficiary filed suit in Superior Court of New Jersey – Middlesex County on April 27, 2023 and defendant removed. (ECF No. 1.) The operative third amended complaint adds Cynthia as a plaintiff and asserts nine counts—including breach of contract and negligence and conversion—relating to defendant's "invasion" of the Trust checking account. (ECF No. 8.) Plaintiffs seek declaratory relief, $2 million or sums sufficient to reasonably compensate them, fees, costs, and punitive damages. (*Id.*) The $2 million sought relates to expenses that stem from defendant's purported invasion, including tax liens on real property owned by the Trust, expenses from defending foreclosure actions, and the cost of making the Trust property suitable for sale. (*Id.* pp. 13–17.)

Defendant answered and asserted a counterclaim against Elias and Cynthia for indemnification. (ECF No. 12.) On the same day that it answered, defendant moved to disqualify Elias as counsel for David and the Trust. (ECF No. 13.) David filed a purported waiver of conflict. (ECF No. 19.) On February 20, 2024, Magistrate Judge Douglas E. Arpert (Ret.) granted defendant's motion to disqualify, concluding that

> On the facts presented, a clear and unmistakable "concurrent conflict of interest" exists by virtue of [Elias's] representation of himself and his wife, whose interests are at odds with those of his brother and the Trust[] inasmuch as the funds withdrawn from the [Trust checking account] were used to pay [Elias and Cynthia's] personal obligations on the HELOC account. Further, because PNC maintains th[at] [Elias] expressly authorized these

---

because it was not made under penalty of perjury); *Duran v. Merline*, 923 F. Supp. 2d 702, 715 n.7 (D.N.J. 2013) (finding that the purported affidavit was "problematic" despite its reference to 28 U.S.C. § 1746 because it was not expressly made under penalty of perjury). The certification of bank officer William Hardrick states, under penalty of perjury, that no right to set-off was applied against the Trust checking account to satisfy obligations under the HELOC. (ECF No. 80–3 p. 3.)

withdrawals, he will necessarily be an important witness in the trial of this case.

(ECF No. 48 p. 5 (citation omitted).)

Judge Arpert rejected Elias's proposal that he be questioned at trial by his son—who is a lawyer at his office. (*Id.* pp. 5, 6.) He further concluded that David's waiver was inadequate because it mischaracterized and insufficiently explained the nature of the conflict, lacked an accurate description of defendant's allegations, and was not witnessed or executed under penalty of perjury. (*Id.* p. 6.)

Plaintiffs were provided 30 days to amend the pleadings to remove any conflict, retain new counsel, or—in the case of Elias, Cynthia, and David—indicate that they intended to proceed *pro se*. (*Id.*) On March 28, 2024, Elias filed a letter advising that new counsel had not been retained, he intended to continue representing himself and Cynthia, and he did not believe that "any counts will be dismissed, only the names of the plaintiffs, so no new pleadings need to be filed." (ECF No. 50.) That same day, this case was reassigned to me. (ECF No. 51.)

Elias and David indicated during a conference with Magistrate Judge Sharon A. King that they intended to retain counsel for the Trust. (ECF No. 59 (May 2, 2024 Min. Entry), ECF No. 60.) Nevertheless, Elias and Cynthia filed a motion for declaratory judgment (ECF No. 61), which I administratively terminated for failure to first obtain leave of the Court (ECF No. 67). I further noted that trusts may not proceed *pro se*, dismissed the Trust's claims, and directed the Clerk to terminate both the Trust from the case and Elias's appearance on behalf of David. (*Id.* pp. 3, 4.)

Elias proceeded to submit multiple filings seeking reconsideration of my dismissal order, primarily seeking modification or clarification permitting him to pursue the Trust's claims as trustee. (ECF No. 69, ECF No. 70, ECF No.

71.)   Defendant filed a pre-motion letter seeking leave to file a motion for summary judgment (ECF No. 72), which Elias opposed (ECF No. 73).   I held a motion hearing on July 15, 2024 (ECF No. 75) during which I declined Elias's request for a prospective ruling on how the claims of the Trust would be treated during dispositive motion practice (July 15, 2024 Hr'g Tr. pp. 13:11–15:3). Elias confirmed that additional discovery was unnecessary to proceed with summary-judgment motion practice.   (*Id.* pp. 15:6–17:3.)   I advised Elias that I would entertain sanctions if motion practice revealed that he was without a reasonable basis to assert his claims and suggested that the parties confer or engage in mediation.   (*Id.* pp. 21:18–22:7.)

Following the hearing, I entered an order denying the motion for reconsideration, granting the requests to proceed with summary-judgment motion practice, and stating that Cynthia and David were to file their own cross-motions unless they agreed to voluntarily dismiss their claims.   (ECF No. 76.)   Defendant's motion followed.   (ECF No. 80.)

On August 23, 2024, Stuart Schneider entered a substitution of attorney to represent both Elias and Cynthia (ECF No. 81) and proceeded to file an opposition brief (ECF No. 82) and amended brief (ECF No. 83).   I had the briefs stricken because of the conflict between Elias and Cynthia, directed the Clerk to remove Stuart's appearance, and provided Stuart until August 30, 2024 to clarify who he intended to represent.   (ECF No. 84 (Aug. 26, 2024 Order).)   I also scheduled a motion hearing for defendant's motion.   (ECF No. 85.)

Stuart never submitted a response and, instead, Elias filed both an opposition to defendant's motion and a separate motion on behalf of himself and Cynthia.   (ECF No. 86, ECF No. 87.)   I struck both filings based on my repeated finding that Elias could not represent Cynthia due to his conflict of

interest.  (ECF No. 89.)  Elias then filed his pending motion (ECF No. 92) and an opposition to defendant's motion (Pl.'s Opp'n Br.).[4]

During the motion hearing on September 16, 2024, I advised that I was prepared to rule on the pending motions but believed that the parties would benefit from mediation.  (ECF No. 101 (Sept. 16, 2024 Hr'g Tr.) p. 12:2–8.)  I again cautioned Elias that I would consider sanctions if his claims turned out to be frivolous.  (*Id.* p. 12:9–16.)  I administratively terminated the pending motions and appointed Kerri E. Chewning, Esq. as mediator.  (ECF No. 100 (Mediation Order).)

Defendant wrote to the court on January 10, 2025 to advise that mediation was unsuccessful.  (ECF No. 103 (Def.'s Jan. 10, 2025 Letter).)  In response, I reinstated the pending motions.  (ECF No. 104 (Jan. 13, 2025 Order).)

## II.    STANDARD AND PARTY ARGUMENTS

### A.    <u>Motions for Summary Judgment</u>

The Federal Rules of Civil Procedure dictate that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine when "the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party'" and a fact is "'material' if it 'might affect the outcome of the suit under the governing law.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Facts and evidence are to be viewed in the light most favorable to the nonmovant.  *Id.*

---

[4] Elias's opposition purports to be submitted on behalf of both himself individually and as co-trustee as well as Cynthia.  (Pl.'s Opp'n Br. p. 28.)  I presume that this was a typographical error.  On the same day that he filed the opposition, Elias confirmed that Cynthia was proceeding *pro se* "unless the court accepts the substitution of Stuart J. Schneider for Elias L. Schneider."  (ECF No. 93 (Pl's Aug. 29, 2024 Letter).)  As stated, Stuart never responded to the Court's direction to clarify who he intended to represent.  (Aug. 26, 2024 Order.)

Local Civil Rule 56.1 provides that "the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A court may exercise its discretion in denying a motion that does not comply with Local Civil Rule 56.1. *See Anise v. JPMorgan Chase Bank*, Case No. 16–08125, 2016 WL 9281267, at *1 (D.N.J. Nov. 29, 2016). Local Civil Rule 56.1 further requires that the party opposing summary judgment file a responsive statement of material facts responding to each paragraph of the movant's statement, asserting agreement or disagreement, "and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion …." L. Civ. R. 56.1(a). Any statement that is not clearly and substantively denied with an appropriate citation to the record is deemed admitted pursuant to Local Civil Rule 56.1. *See Coastal Jersey Holdings, LLC v. Giordano*, Case No. 22–02024, 2023 WL 7545301, at *5 (D.N.J. Nov. 14, 2023); *see also* Fed. R. Civ. P. 56(e) (stating that—upon a party's failure to properly address an assertion of fact—a court may provide an opportunity to address that fact, consider the fact undisputed, grant summary judgment if the movant is entitled to it, or issue any other appropriate order).[5]

### B.    **Party Arguments**

Defendant first asserts that Elias and Cynthia are without standing because David is the sole beneficiary of the Trust and thus the only one with a cognizable interest in the Trust property. (ECF No. 80–1 (Def.'s Mot. Br.)

---

[5] This rule is applicable to the pending motion practice. Elias's responsive statement of facts contains few citations to the record and the majority of his assertions are unsupported. (Pl.'s Responsive Statement of Facts.) Defendant's statement of facts is therefore deemed admitted to the extent that any denial is not supported pursuant to Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(a).

pp. 14, 15.) [6]   Elias and Cynthia further cannot demonstrate the harm necessary to confer standing.   (*Id.* p. 15.)   On the merits, defendant argues that the record shows that Elias and Cynthia authorized the payments to the HELOC and benefited from them.   (*Id.* pp. 16, 17.)   The breach-of-contract, negligence, and conversion claims are all barred by the statute of limitations, according to defendant, as are the related claims for declaratory relief.   (*Id.* pp. 17–20.)   Similarly, defendant contends that equitable estoppel and laches prohibit relief when Elias and Cynthia authorized the payments and did not dispute them for 17 years.   (*Id.* pp. 21–24.)   Lastly, defendant submits that it is entitled to its fees and costs pursuant to its right to indemnification and the Court's inherent power to sanction.   (*Id.* pp. 24–29.)

Elias likens defendant's argument that it was following his authorization to the acts of war criminals during World War II and claims that defendant seeks to deflect its participation in the joint wrong.   (Pl.'s Opp'n Br. pp. 5–8.) Defendant was on notice that the Trust checking account contained the funds of others and cannot invoke estoppel when it knowingly participated in the wrong.   (*Id.* pp. 8–10.)   Elias cites the "Two Hats Doctrine" and claims that he signed the HELOC wearing the hat of a borrower and not as trustee.   (*Id.* pp. 13, 14.)   If Elias signed the HELOC while wearing the hat of a property owner, he would have assumed that he was authorizing payments from his own account and defendant debited from the incorrect account.   (*Id.* pp. 16, 17.)   If the payments were always to come from the Trust checking account, the

---

[6] In his responsive statement of facts, Elias states that "[a]lthough David is entitled to moneys in the trust checking account due to unequal prior distributions, he is not the sole owner of the real-estate that was then owned by the trusts" and that "Elias still has an equitable ownership interest in the real-estate that was owned by the trusts …."   (Pl.'s Responsive Statement of Facts p. 8.)   This contradicts the third amended complaint, which states that David is the sole remaining beneficiary of the Trust.   (Third Am. Compl. p. 3.)   To the extent that any potential prior or current equitable interest of Elias's is relevant, Elias's responsive statement of facts is unsupported by citations to the record.

applicable provision is illegal and void. (*Id.* p. 17.) Elias argues that defendant's right to set-off should be declared illegal and unenforceable. (*Id.* pp. 21–25.) Finally, on the issue of standing, Elias contends that he has only been terminated as attorney for the Trust and that he remains trustee and attorney for himself as trustee. (*Id.* pp. 25, 26.)

Contrary to Local Civil Rule 7.1(h), Elias also filed a separate moving brief for his own motion. This brief raises related but distinct arguments and requests for relief. Much of Elias's brief is dedicated to defendant's set-off power and seeks declaratory judgment stating that defendant cannot exercise this power or claim a security interest when the relevant account is a trust account. (ECF No. 92–1 (Pl.'s Mot. Br.) pp. 16–32.) Elias seeks such relief even if defendant asserts alternative reasons for applying funds from the Trust checking account to the HELOC. (*Id.* pp. 16, 17.) Elias's second point mirrors his opposition brief as he claims that defendant seeks to explain away its role in the wrongful debits from the Trust checking account and that defendant is liable for its participation in the joint wrong. (*Id.* pp. 32–41.) Finally, Elias attempts to clarify his participation in this case, claiming that his role as trustee has never been disturbed. (*Id.* pp. 42, 43.)

## III. DISCUSSION

### A.  <u>Standing</u>

I begin with the parties' contentions on standing. "'The Supreme Court has repeatedly described the question of Article III standing as a "threshold" issue,' and courts have a continuing obligation to assure themselves of jurisdiction." *Schultz v. Midland Credit Mgmt., Inc.*, 617 F. Supp. 3d 249, 252 (D.N.J. 2022) (quoting *Schaller v. United States SSA*, 844 F. App'x 566, 570 (3d Cir. 2021)).

Federal courts' jurisdiction is limited to cases and controversies. U.S. Const., art. III, §2, cl. 1. The case-and-controversy limitation includes the

requirement that a plaintiff have standing to sue. *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 310 (3d Cir. 2022). "To establish standing, a plaintiff must show an injury in fact fairly traceable to the challenged action that a favorable ruling may redress." *Greenberg v. Lehocky*, 81 F.4th 376, 384 (3d Cir. 2023). A plaintiff is required to establish standing for each form of relief sought, *Yaw*, 49 F.4th at 317, and at summary judgment a plaintiff must set forth specific facts to establish standing, *Greenberg*, 81 F.4th at 384.

### 1.    Trust Claims

As stated at the outset, who may bring what claims and in what capacity are critical to the resolution of this case. Defendant's position is that only David has a cognizable interest in the Trust property and Elias and Cynthia were not harmed and therefore lack standing. (Def.'s Mot. Br. pp. 14, 15.) Elias maintains that he is trustee and attorney for the trustee and thus owns the claims of the Trust and possesses standing. (Pl.'s Opp'n Br. pp. 25, 26.)

At first blush, Elias is not entirely incorrect. In *Marin v. Leslie*, the *pro se* plaintiff commenced a Section 1983 action as trustee and co-beneficiary of his father's business trust seeking to set aside a tax sale of real property. Case No. 06–00690, 2008 WL 4238961, at *1 (W.D. Pa. Sept. 10, 2008). In response to the defendants' motion for summary judgment, the court concluded that the plaintiff lacked standing to prosecute a claim that an automatic stay was violated because he was not the debtor in the bankruptcy and possessed only a contingent beneficiary interest in the trust. *Id.* at *4. Because the trust was the real party in interest, the plaintiff as trustee also could not substitute himself for the trust and pursue recovery. *Id.* at *5. Even ignoring the deficiencies in standing, the court concluded that permitting the plaintiff to proceed would have effectively condoned the unauthorized practice of law. *Id.*

The Third Circuit affirmed as modified. *Marin v. Leslie*, 337 F. App'x 217, 220 (3d Cir. 2009). The district court was incorrect to conclude that the

10

plaintiff lacked standing as trustee because "the trust [wa]s the true party in interest and the trustee may sue on its behalf." *Id.* at 219. The Third Circuit nonetheless affirmed because the district court correctly concluded that, even if the plaintiff possessed standing, he could not pursue the claims *pro se*. *Id.* at 219–20; *see also Smith v. Thomas-Street*, Case No. 24–04215, 2024 WL 3993222, at *3 (E.D. Pa. Aug. 29, 2024) ("Although a trustee may sue on behalf of a trust when the trust [is] the true party in interest, the trustee may not do so on a *pro se* basis ….").

So far so good for Elias. He stated at the motion hearing that the Trust should have never been named as a plaintiff because it could not sue or be sued itself, but rather only in the name of the trustee. (Sept. 16, 2024 Hr'g Tr. p. 6:13–17.) Elias the attorney seeks to represent Elias the trustee. (*Id.* p. 6:20–22; *see also* Pl.'s Mot. Br. pp. 42, 43 (asserting that Elias's role as trustee has not been disturbed).) Ordinarily, this may be permissible. *See Velger v. Carr*, Case Nos. 10–00042 & 10–00051, 2010 WL 5559536, at *1 (D.V.I. Dec. 13, 2010) (finding that ABA Model Rule of Professional Conduct 3.7(a)—which prohibits advocacy at trial when the attorney is likely to be a necessary witness—did not prohibit the defendant from representing himself in his individual capacity and as trustee but could prohibit him from representing the trust at trial); *see also cf. Van De Berg v. C.I.R.*, 175 F. App'x 539, 541 (3d Cir. 2006) ("[A] *non-lawyer trustee*, such as Van De Berg, may not represent a trust *pro se* before this Court." (emphasis added)).

However, I must consider the effect of Elias's disqualification. The law on the issue is sparse and the most helpful authority that I have been able to locate is the Eleventh Circuit's decision in *J.J. Rissell, Allentown, PA Trust v. Marchelos*, 976 F.3d 1233 (11th Cir. 2020). There, the bankruptcy court disqualified an attorney and his firm from representing the trust because the trust was a shareholder in the debtor created to ensure that the firm collected

its fees. *J.J. Rissell, Allentown, PA Trust*, 976 F.3d at 1235. The firm ignored the disqualification order and another attorney from the firm filed notices of appeal on behalf of the trust. *Id.* at 1235–36. The court dismissed the appeals because it was not clear that the trust intended to appeal through a qualified agent. *Id.*

> By virtue of his disqualification from representing the Trust as a lawyer, John Moffa *stands in the same position as a nonlawyer trustee.* And a nonlawyer trustee has no authority to represent a trust in court. A "trustee represents the interests of others and would therefore be engaged in the unauthorized practice of law" if allowed to appear *pro se* as a nonlawyer.
>
> *Id.* at 1236 (emphasis added) (quoting *EHQF Tr. v. S & A Cap. Partners, Inc.*, 947 So. 2d 606, 606 (Fla. Dist. Ct. App. 2007)).

Placed side-by-side, *Marin* and *J.J. Rissell, Allentown, PA Trust* lead me to conclude that Elias has standing to sue as trustee, but may not do so *pro se* because he is a non-attorney *pro se* litigant by virtue of his disqualification. Non-attorney trustees may not proceed *pro se*. *See Van De Berg*, 175 F. App'x at 541; *see also Velger v. Carr*, Case No. 10–00042, 2012 WL 684748, at *2 n.5 (D.V.I. Feb. 29, 2012) (noting that if the trustee was disqualified from representing the trust he could not act as trial counsel).

This is a logical result. The issue of standing and who may bring what claims in what capacity admittedly peers through to the merits of case and the undisputed facts because they are intertwined with why Elias was disqualified in the first place. To borrow a horror trope, the allegations are squinting out the window for a supposed bogeyman, but the unrebutted facts show that the call is coming from inside the house. Elias the trustee's best claim might well be against Elias the individual, which is one reason why Judge Arpert disqualified him in the first place.

Elias has confirmed as much on multiple occasions.  (*See, e.g.*, Sept. 16, 2024 Hr'g Tr. p. 8:5–8 ("The trustee is the one who determines who to sue, when to sue, what to sue for.  He has decided no suit should be filed against Elias Schneider."); ECF No. 55 (Pl.'s Apr. 27, 2024 Aff.) p. 10 ("I also have a natural reluctance to pay for legal counseling where the purpose of that counseling is to sue me ….").)  These quick changes from one role to another do not obscure Elias's obvious conflict, they only make it clearer.

Elias's repeated citations to *Bank of Giles County v. Fidelity & Deposit Co. of Maryland*, 84 F.2d 321 (4th Cir. 1936) do not help him.  The crux of *Bank of Giles County* was the assertion that the banks knowingly permitted the county treasurer to pay his personal indebtedness out of county funds.  84 F.2d at 322. The Fourth Circuit concluded that by accepting checks drawn in breach of trust to satisfy the treasurer's personal debt, the banks participated in the breach. *Id.* at 324.  This principle is presumably intended to apply to defendant's acceptance of payments from the Trust checking account to the HELOC, but the decision is too distinct to be instructive.  The treasurer did not turn around *pro se* and pursue the claims against the banks for assisting in his scheme and there was therefore no discussion as to any inherent conflict in doing so. Whatever persuasive value the Fourth Circuit's decision might provide, it is inapplicable to Elias's claims as trustee because he is not qualified to present it.

## 2. <u>Individual Claims</u>

Of course, Elias may represent himself in pursuing any personal claim that he may have.  Count 7 of the third amended complaint seeks personal damages for stress, anxiety, embarrassment, aggravation, humiliation, and adverse effects on his familial standing and relationships.  (Third Am. Compl. pp. 22, 23.)  During the motion hearing, I pointedly asked Elias what his personal damages were, to which he cited his fractured relationship with David.

(Sept. 16, 2024 Hr'g Tr. p.9:1–8.)    Elias proposed having a jury decide the monetary value of a damaged familial relationship.    (*Id.* p.9:12–13.)

Even if Elias may theoretically pursue his personal claim on behalf of himself, that does not necessarily mean that he meets the requirements for standing.    Elias must establish standing—requiring harm, traceability, and redressability—for each form of relief sought.    *Yaw*, 49 F.4th at 311, 317.

The alleged harm to his familial relationships does not readily meet the standing requirements.    For instance, in *Kaetz v. United States*, the plaintiff sought reconsideration of an order dismissing his claims—consisting of political grievances and challenges to Governor Phil Murphy's COVID-19 executive orders—for lack of standing.    Case No. 19–08100, 2021 WL 822805, at *1–2 (D.N.J. Mar. 4, 2021).    Plaintiff claimed injuries including loss of relationships with family and friends.    *Id.* at *2.    The court denied plaintiff's motion because—even if such newly asserted injuries were appropriate for reconsideration—the plaintiff failed to plausibly allege that the injuries were traceable to the defendants' alleged actions or redressable by the court.    *Id.*

Similar issues arise with Elias's personal claim. Any fractured relationship between he and David most logically relates to Elias's own actions in authorizing payments from the Trust checking account to the HELOC.    It is also unclear that a ruling in Elias's favor would mend the relationship.    In any event, I need not speculate on the traceability or redressability of Elias's purported harm because it is Elias's obligation at this stage to set forth specific facts to establish standing.    *See Greenberg*, 81 F.4th at 384.    He has failed to do so.

In sum, Elias's claims asserted in his capacity as trustee will be dismissed by virtue of Judge Arpert's disqualification order and Elias's subsequent failure to retain counsel.    Defendant's motion will be granted as to Elias's sole

remaining claim, Count 7 of the third amended complaint, because Elias has failed to establish standing to assert it.[7]

### B.     David's Failure to Prosecute

Next, I turn to David.   David, as the sole beneficiary (Third Am. Compl. pp. 3, 9) may not have the same impediments to proceeding *pro se* as Elias, *see In re Pantagis*, Case No. 23–03586, 2025 WL 1139403, *3 (Bankr. D.N.J. Apr. 16, 2025).   At the same time, it is apparent that David has abandoned whatever claims he may have had.   On April 27, 2024, Elias stated that he advised David of his right to pursue claims against both Elias and defendant. (Pl.'s Apr. 27, 2024 Aff. pp. 9, 10.)   Elias further stated that he informed David that his appearance was required at the May 2, 2024 conference before Judge King (ECF No. 56 p. 2), which David attended (May 2, 2024 Min. Entry).

David failed to appear in person for the July 15, 2024 hearing for the motion for reconsideration and so I called him from the bench.   (July 15, 2024 Hr'g Tr. pp. 4:18–5:3.)   David confirmed over the phone that he understood that he was proceeding *pro se* and stated that he was of the understanding that he

---

[7] Cynthia's personal claim will also be dismissed.   The third amended complaint does not state that Cynthia is a trustee or beneficiary of the Trust, but rather asserts an independent per quod claim for "depriv[ation] of the comfort, services, and society of her husband."   (Third Am. Compl. p. 23.)   Cynthia, proceeding *pro se* (Pl's Aug. 29, 2024 Letter), has not filed an opposition.   This alone does not entitle defendant to summary judgment.   In order to grant an unopposed motion for summary judgment where the movant does not bear the burden of proof "the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law."   *Muskett v. Certegy Check Servs., Inc.*, Case No. 08–03975, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010) (alterations in original) (quoting *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir.1990)).   Here, I acknowledge barriers to Cynthia's potential self-representation, but conclude that her personal claim must be dismissed because Elias's claims have been dismissed.   The per quod claim is derivative of Elias's claims.   *See Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 769 (D.N.J. 2016).   Because Elias's underlying claims fail, so too must Cynthia's derivative claim.   *See id.* (granting summary judgment on the spouse's per quod claim because the claims from which it derived were not viable).

"was pretty much out of this whole thing with [his] brother." (*Id.* p. 5:5–7, 20–23.)   He further expressed an interest in voluntarily dismissing his claims against defendant. (*Id.* pp. 9:15–10:19.)   I kept David on the line during the remainder of the motion hearing and instructed him that, if he decided not to voluntarily dismiss his claims, he would be subject to the briefing schedule for summary-judgment motion practice. (*Id.* p. 18:5–8.)   The subsequent briefing schedule provided David until August 27, 2024 to file a cross-motion for summary judgment.   (Aug. 7, 2024 Briefing Order.)

David never filed a cross-motion or opposition to defendant's motion. This despite defendant sending a copy of its motion to David's address of record via FedEx. (ECF No. 80–6.)   Defendant further advised the Court during the September 16, 2024 motion hearing that it served David with its motion papers and David did not respond to efforts to have his claims voluntarily dismissed. (Sept. 16, 2024 Hr'g Tr. pp. 3:25–4:7.)   Elias told me that he called and texted David informing him of the motion hearing, but that David did not respond. (*Id.* p. 4:16–20.)   I called David during the hearing and he did not answer or call back. (*Id.* pp. 4:21–5:7.)   David was emailed notice that mediation was unsuccessful (Def.'s Jan. 10, 2025 Letter) and was mailed notice that the pending motions were reinstated (Jan. 13, 2025 Order).

It has thus been more than 10 months since David has participated in this case in any manner despite his knowledge that dispositive motion practice was commencing.   Courts possess discretion to dismiss cases *sua sponte* pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute so long as they apply the balancing test of *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984).   *See Nieves v. Thorne*, 790 F. App'x 355, 357 (3d Cir. 2019) (reviewing dismissal for abuse of discretion).

> Under *Poulis*, a court must weigh: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders

and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense."

*Id.* (quoting *Poulis*, 747 F.2d at 868.)

As to the first factor, David is proceeding *pro se* and is thus responsible for his failure to participate in this litigation. *See Dickens v. Danberg*, 700 F. App'x 116, 118 (3d Cir. 2017). Second, I conclude that David's failure to prosecute has prejudiced defendant. David has been advised of his obligation to participate in summary-judgment motion practice during both the July 15, 2024 hearing and the subsequent scheduling order. Defendant's motion was thereafter delivered to him. David's failure to respond to defendant's summary-judgment motion frustrates resolution of this case. *See Williams-Bearden v. Clouser*, Case No. 20–01495, 2021 WL 4743705, at *2 (M.D. Pa. Oct. 12, 2021); *Lassiter v. City of Phila.*, Case No. 14–00239, 2015 WL 845722, at *3 (E.D. Pa. Feb. 25, 2015).

Third, David has been proceeding *pro se* since Judge Arpert's disqualification order in February 2024. There has been no indication since that David has attempted to retain counsel or proceed with any potential claim *pro se*. To the contrary, David expressed an interest in dismissing his claims during his last interaction with the Court, something he did not ultimately consummate with defendant. David's unresponsiveness over the past 10 months provides no indication whether he intends to proceed, satisfying the third factor. *See Jiminez v. Aramark Corp.*, Case No. 07–02758, 2008 WL 2837544, at *3 (D.N.J. July 21, 2008); *see also Tate v. Lindsay*, Case No. 20–00086, 2024 WL 5643256, at *2 (W.D. Pa. Mar. 27, 2024) (noting that the plaintiff failed to respond to the defendants' motion for summary judgment for

nine months after it was due and also did not respond to the court's order to show cause).

Fourth, I find that David's actions are willful.   He has been proceeding *pro se* since February 2024 and has been aware of this fact at least as far back as the July 15, 2024 motion hearing.   He was further made aware during that hearing that he was to participate in summary-judgment motion practice unless he wished to voluntarily dismiss his claims.   His decision to pursue neither path supports dismissal.   *See Dickens*, 700 F. App'x at 118 (agreeing with the district court's conclusion that the *pro se* plaintiff's failure to participate was willful because only he was able to prosecute his own case).

Fifth, I consider the effectiveness of alternative sanctions.   When a plaintiff is proceeding *pro se* as David is, monetary sanctions are seldom appropriate.   *See Voorhees v. Tolia*, Case No. 16–8208, 2023 WL 11991170, at *2 (D.N.J. Jan. 3, 2023).   That does not end the inquiry, however.   I am to consider additional alternatives such as formal reprimands and warnings.   *See Adkins v. Reynolds*, 788 F. App'x 824, 828 (3d Cir. 2019).

I conclude that such efforts would be futile, particularly because David previously expressed an interest in dismissing his claims and has since failed to oppose defendant's motion for summary judgment or attend the related hearing.   "'The authority of a court to dismiss for lack of prosecution' is governed by the need for 'courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"   *Parks v. Ingersoll-Rand Co.*, 380 F. App'x 190, 195 (3d Cir. 2010) (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 631 (1962)).   Delaying disposition at this stage to issue a warning, reprimand, or similar lesser sanction would serve little purpose in light of David's inability or disinterest in pressing his claims, as evidenced by his decision not to oppose summary judgment.   *See Gremo v. Bayer Corp.*, Case No. 19–13432, 2025 WL 509164, at *4 (D.N.J. Feb. 13, 2025) ("By failing to

prosecute her action for a year and ignoring a pending motion for summary judgment, Plaintiff has signaled her disinterest or inability to advance this action."); *Glenn v. Sims*, Case No. 18–13877, 2024 WL 3104317, at *4 (D.N.J. June 24, 2024) (finding that the plaintiffs indicated their desire to abandon the case by not opposing summary judgment).

Lastly, I consider the merits of David's claims. David has not advanced any argument of his own. The record is clear that payments to the HELOC were debited from the Trust checking account, of which David is the alleged sole beneficiary. The extent to which defendant is liable for these payments has not been adequately fleshed out and any potential liability appears to be shared with Elias and Cynthia. Because David has been harmed but the responsibility for that harm is unclear, I consider this factor to be neutral.

In sum, after evaluating the six *Poulis* factors, I conclude that five support dismissal. *See Doe v. Megless*, 654 F.3d 404, 411 (3d Cir. 2011) (noting that all six factors need not be met to warrant dismissal); *see also Bailey v. Sec. Veterans Admin.*, 535 F. App'x 93, 94 (3d Cir. 2013) ("There is no 'magic formula' or 'mechanical calculation' for balancing the *Poulis* factors, and a District Court need not find all of the factors satisfied in order to dismiss a complaint." (quoting *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008))). David's claims will therefore be dismissed pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.

## C.    Defendant's Request for Fees and Costs

Finally, defendant seeks fees and costs pursuant to its contractual and common-law right to indemnification or, alternatively, pursuant to the Court's inherent power to impose sanctions. (Def.'s Mot. Br. pp. 24–29.) Elias does not challenge defendant's entitlement to fees in his moving brief or opposition. Because my decision above is premised on Elias's inability to press his claims as trustee and lack of standing, I necessarily cannot reach and do not reach the

merits of indemnification. I therefore consider defendant's alternative argument premised on my inherent power to sanction.

"[F]ederal courts, in the exercise of their equitable powers, may award attorney['s] fees when the interests of justice so require." *Davison Design & Dev., Inc. v. Scorza*, Case No. 24–01442, 2025 WL 789546, at *3 (3d Cir. Mar. 12, 2025) (second alteration in original) (quoting *Hall v. Cole*, 412 U.S. 1, 4–5 (1973)). Courts possess considerable discretion in exercising their equitable power to sanction. *See id.* (reviewing the district court's awarding of attorney's fees for abuse of discretion).

Elias was or should have been aware of the inherent conflict present in his representation of the Trust and its interests from the outset of this litigation. Any doubt—the product of hope or otherwise—should have been resolved in February 2024 when Judge Arpert disqualified him. From that point Elias's choices were simple: seek outside counsel or cease his pursuit. He instead chose to not amend the complaint or retain counsel, challenge my order dismissing the Trust's claims, and engage in summary-judgment motion practice. Elias does not contest that he "may have benefitted" from the payments from the Trust checking account to the HELOC or that he "will have to work [that] … out with the Trust at some point," but rather takes the position that he as trustee has chosen not to sue himself for any potential impropriety. (Sept. 16, 2024 Hr'g Tr. p. 8:5–8, 23–25.)

Foreseeing this result, I explicitly advised Elias during the July 15, 2024 hearing that I would consider sanctions against him if defendant was successful at summary judgment and I concluded that he did not have a reasonable basis for pursuing his claims. (July 15, 2024 Hr'g Tr. p. 21:18–23.) I suggested to Elias that he may consider conferring with counsel or mediation before pressing forward. (*Id.* pp. 21:24–22:7.) I repeated my warning during the September 16, 2024 hearing for the pending motions and ordered that the parties mediate

for the specific purpose of providing Elias with a third-party perspective on his claims. (Mediation Order, Sept. 16, 2024 Hr'g Tr. p. 12:9–16.) These warnings were not heeded.

I conclude that the interest of justice requires imposition of sanctions in the form of defendant's reasonable attorney's fees and costs from February 20, 2024, the date of Judge Arpert's disqualification order, to present.   Defendant will be provided 30 days from the date of this opinion and corresponding order to file a fee application and Elias will be provided 30 days afterward to oppose. The application should present all information necessary for the Court to conduct a lodestar analysis.   Defendant shall also supply authority for applying any attorney's fees and costs awarded to the HELOC.[8]

## IV.  CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (ECF No. 80) will be GRANTED IN PART and Elias's motion for summary judgment (ECF No. 92) will be DENIED AS MOOT.   Defendant will be

---

[8] Without prejudging defendant's application, I raise a few reservations here. First, this decision largely rests on Elias's disqualification and lack of standing. Therefore, I do not reach the merits of defendant's request for indemnification. Second, even interpreting defendant's defense as an "other action … taken to … protect the security of th[e] Mortgage," (Def.'s Exs. p. 15), it does not clearly follow that fees and expenses awarded must be applied to the HELOC the mortgage secured.   Finally, and most significantly, the HELOC represents the indebtedness of both Elias and Cynthia.   The claims against defendant have been pressed by Elias as attorney for all plaintiffs and, later, Elias as a *pro se* litigant.   Cynthia has not taken any clear action on behalf of herself since Elias's disqualification and applying fees and costs to the couple's joint HELOC risks sanctioning Cynthia for Elias's actions.

provided 30 days to file an application for fees. An appropriate order accompanies this opinion.

_/s/ Edward S. Kiel_____
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated:  May 28, 2025