**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **HARRY & IRENE SCHNEIDER DISTRIBUTION TRUST,** *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **PNC BANK NATIONAL ASSOCIATION,** <br><br> **Defendant.** | **Case No. 23–cv–03146–ESK–SAK** <br><br><br> **OPINION** |

**KIEL, U.S.D.J.**

Co-plaintiff and counsel Elias Schneider (Elias) filed this action seeking to recoup years of payments made from the account of a Trust—for which he serves as co-trustee—to his personal home equity line of credit.   Elias conceded that he authorized these payments, but—as trustee—had elected not to sue himself.   After being disqualified as counsel and twice warned that he faced sanctions if he continued, Elias pressed on to summary judgment undeterred. The bill has now come due.   Because the Court has already determined that defendant PNC Bank, N.A. is entitled to attorney's fees and costs and the Court finds that those fees and costs, as supported by PNC's exhibits, are reasonable as reduced, PNC's motion for attorney's fees and costs (ECF No. 107 (PNC Mot.)) will be granted with minor adjustments.

## I.    FACTS AND PROCEDURAL HISTORY

Elias filed the instant action in New Jersey Superior Court – Middlesex County in April 2023.   As amended, Elias—a barred attorney—brought claims on behalf of himself, his wife Cynthia M. Schneider (Cynthia), his brother David S. Schneider (David), and two trusts referred to collectively as the Harry &

Irene Schneider Distribution Trust.   (ECF No. 8 (Third Am. Compl.).)[1]   The crux of plaintiffs' claims was that PNC deducted from the Trust's checking account payments necessary to satisfy Elias and Cynthia's home equity line of credit.   (*Id.* pp. 9, 10.)   Elias and David are co-trustees of the Trust and David is the beneficiary.   (*Id.* pp. 8, 9.)

The actions relevant to the instant motion pick up on February 20, 2024. Magistrate Judge Douglas E. Arpert (Ret.) disqualified Elias as counsel based on "a clear and unmistakable 'concurrent conflict of interest'" that existed by virtue of the fact that Trust funds were used to pay Elias and Cynthia's personal obligations.   (ECF No. 48 pp. 5, 6.)   Further, because PNC maintained that Elias expressly authorized the withdrawals, Elias would have been an important witness at trial, according to Judge Arpert.   (*Id.*)   While Judge Arpert provided plaintiffs 30 days to retain counsel (*id.* p. 6), Elias stated that he would continue representing himself and Cynthia and did not believe that an amended complaint would be necessary (ECF No. 50).

After this case was reassigned to me (ECF No. 51), I dismissed the Trust because Elias had been disqualified and the Trust's claims could not be pursued *pro se*.   (ECF No. 67).   I further, consistent with the disqualification order, terminated Elias's appearance on behalf of David.   (*Id.* p. 4.)   In response to Elias's motion for reconsideration (ECF No. 69), I held a hearing on July 15, 2024 (ECF No. 88 (July 15, 2024 Hr'g Tr.)).   During that hearing, I offered Elias my perspective on the case and advised that I would consider sanctions if PNC's forthcoming motion for summary judgment was granted and I concluded that Elias had no reasonable basis to assert his claims.   (*Id.* pp. 19:4–21:23.)   I encouraged Elias to confer with PNC's counsel or participate in mediation and offered to postpone summary judgment motion practice in order to

---

[1] The third amended complaint explains that the two trusts operate under the Harry & Irene Schneider Distribution Trust name.   (Third Am. Compl. p. 2.)   The Court adopts this convention and refers to the Trust as a single entity.

2

accommodate such efforts. (*Id.* pp. 21:24–22:7.) The parties followed on August 6, 2024 with a briefing schedule for summary judgment motion practice. (ECF No. 78.)

I held a hearing on the parties' summary judgment motions on September 16, 2024. (ECF No. 101.) During the hearing, I raised the issue of standing with Elias and expressed my concern with his prosecution of the Trust's claims as co-trustee or otherwise in light of the clear conflict present. (*Id.* pp. 5:25–8:16.) I indicated that I was prepared to rule on the motions but believed that mediation would be helpful and encouraged Elias to listen to what the mediator might say. (*Id.* pp. 12:5–16, 14:20–15:3.) I repeated that if I determined that the case was frivolous and Elias was without standing, I would consider sanctions. (*Id.* p. 12:9–12.) PNC wrote to the Court on January 10, 2025 stating that mediation was unsuccessful. (ECF No. 103.)[2] I reinstated the parties' motions for summary judgment. (ECF No. 104.)

I granted PNC's motion for summary judgment in part and denied Elias's motion as moot in a May 28, 2025 opinion and order. (ECF No. 105 (May 28, 2025 Op.); ECF No. 106.) Consistent with my advisements, I concluded that Elias could not prosecute claims as trustee due to his disqualification and that he failed to establish Article III standing for his individual claim premised on tarnished familial relationship. (May 28, 2025 Op. pp. 10–15.) [3] Of importance here, I granted PNC's request for attorney's fees and costs on the

---

[2] Elias represents that, following mediation, he offered to voluntarily dismiss this case and reimburse PNC its costs. (ECF No. 110 (Elias Opp'n Br.) p. 23.) While an offer to that general effect was erroneously filed on the docket (ECF No. 102), Elias opted not to take definitive steps—such as, for instance, filing a notice of voluntary dismissal for the Court's consideration—in the four months between the unsuccessful mediation and the Court's summary judgment decision.

[3] Separately, Cynthia's per quod claim was dismissed as derivative of Elias's claims and David's claims were dismissed for failure to prosecute. (May 28, 2025 Op. pp. 15 n. 7, 15–19.)

alternative basis of my inherent power to sanction. (*Id.* pp. 19–21.) I concluded that Elias was, or should have been, aware of the inherent conflict of his representation of the Trust from the outset and any doubt should have been resolved upon Judge Arpert's disqualification order. (*Id.* p. 20.) The interests of justice therefore required imposition of sanctions in the form of PNC's reasonable attorney's fees and costs from the date of the disqualification order to the present. (*Id.* p. 21.)

The pending motion followed in which PNC seeks $54,950 in attorney's fees and $1,774.66 in costs. (PNC Mot.) Elias filed an opposition (Elias Opp'n Br.) to which PNC replied (ECF No. 111 (PNC Reply Br.)).

## II.    STANDARD AND PARTY ARGUMENTS

### A.    Attorney's Fees

Courts possess the inherent authority to impose sanctions on those who abuse the judicial process. *See Arneault v. O'Toole*, 718 F. App'x 148, 153 (3d Cir. 2017). This authority includes the assessment of attorney's fees when a party has been found to have acted in bad faith. *Chang v. Able C&C Co. Ltd.*, 778 F. Supp. 3d 654, 674 (D.N.J. 2025); *see also In re Mondelli*, 558 F. App'x 260, 264 (3d Cir. 2014) ("Because the Bankruptcy Court properly determined that Mondelli acted in bad faith, it similarly acted within its discretion in sanctioning him for the costs Silverman and the Chapter 13 Standing Trustee have incurred in responding to this petition."). Courts' authority to sanction is further untethered to any specific rule or statute. *See Rorrer v. Cleveland Steel Container*, 564 F. App'x 642, 644–45 (3d Cir. 2014) (discussing a court's power to sanction beyond the authority provided by Federal Rule of Civil Procedure 16(f)).

District courts exercise considerable discretion in awarding and calculating attorney's fees. *See Dungee v. Davison Design & Dev. Inc.*, 674 F. App'x 153, 156 n. 2 (3d Cir. 2017) (noting that the awarding of attorney's fees

4

and the amount of an award are within a district court's discretion while the standards used to calculate the award are subject to plenary review). A district court abuses its discretion if it fails to apply the correct legal standard or bases an award on clearly erroneous findings of fact. *Id.*

The lodestar is calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended, resulting in a presumptively reasonable fee. *Simring v. Rutgers*, 634 F. App'x 853, 857 (3d Cir. 2015). Courts utilize a burden-shifting framework in calculating the lodestar. *Dee v. Borough of Dunmore*, 548 F. App'x 58, 60 (3d Cir. 2013). The movant is first responsible for producing evidence supporting the rate charged and hours expended, after which the opponent may object to either or both figures. *Id.* The court may then exercise its discretion in adjusting the hours and rates asserted based on arguments raised by the opponent. *Id.*

## B.  Party Arguments

PNC submits that the Court has already concluded that sanctions are warranted based on Elias's conduct and that conclusion is now the law of the case. (PNC Mot. pp. 2, 3; PNC Reply Br. pp. 4, 5.) The fees sought are the product of Elias's baseless claims and willful, bad faith tactics in prolonging the case. (PNC Mot. p. 5; PNC Reply Br. pp. 7, 8.) PNC asserts that the fees sought are premised on reasonable, below-market hourly rates and contemporaneously recorded hours. (PNC Mot. pp. 5, 6; PNC Reply Br. p. 9.) Elias's challenges to the propriety of sanctions are untimely and arguments as to the fee amount are without merit, according to PNC. (PNC Reply Br. pp. 3, 4, 9–11.)

Elias spends significant space in his opposition rehashing the complexity of the underlying case and his related confusion. (Elias Opp'n Br. pp. 4–8, 23–28.) He states that he has never before been sanctioned, has no interest in further pursuing this case, and—given his age and health—is unlikely to repeat

his sanctionable actions.    (*Id.* pp. 2, 3, 34.)    Focusing more on the fee request itself, Elias contends that the American Rule requires parties to cover their own legal fees and PNC has failed to rebut that presumption by (1) citing a statutory basis and (2) prevailing (3) on the merits.    (*Id.* pp. 2, 12–17.)    Many of the fees sought are for communications among attorneys or with the client, according to Elias, and PNC did not spend significant time on the merits of—as opposed to technical issues with—plaintiffs' claims.    (*Id.* pp. 8–12, 29–32.)

### III.  DISCUSSION

#### A.    <u>Elias's Claims of Confusion</u>

Brief reference to Elias's efforts to revisit my summary judgment decision and the related confusion he has experienced is necessary given the significant portion of Elias's opposition brief dedicated to these points.    Out of respect to the Court and the parties, I will not prolong this case—now in its final stage after significant time unnecessarily expended—by rebutting each of Elias's arguments.    Suffice it to say, Elias's arguments are untimely.

Following my two in-person warnings to Elias about the possibility of sanctions, PNC requested attorney's fees and costs—either through its right to indemnification or, alternatively, the Court's power to sanction—in its moving brief.    (ECF No. 80–1 (PNC Summ. J. Br.) pp. 24–29.)    Elias did not respond to this request in either his cross-motion (ECF No. 92) or his opposition to PNC's motion (ECF No. 94).    I noted this lack of response in the summary judgment decision.    (May 28, 2025 Op. p. 19.)    I then stated that I would not reach the issue of indemnification because my decision rested on representative and standing issues and, instead, concluded that fees and costs would be awarded through the Court's inherent power to sanction.    (*Id.* pp. 19–21.)

Elias claims now that he did not address PNC's request for attorney's fees because he thought it premature.    (Elias Opp'n Br. p. 24.)    This appears to have been a strategic misstep.    Because I have already determined that the

6

interests of justice require the imposition of PNC's reasonable attorney's fees and costs as a sanction, I decline Elias's invitation to revisit the summary judgment decision or excuse Elias's conduct during this case due to purported confusion.   Elias's related argument that "[c]ourts should provide counsel an opportunity to be heard before imposing sanctions" (*id.* p.28) is rejected for these same reasons.

### B.      Challenges to Fees as a Sanction

Moving closer to the substance of the instant motion is Elias's repeated position that PNC fails to meet several threshold requirements for overcoming the American Rule and obtaining fees.   These include the need for (1) statutory authorization, (2) prevailing party status, and (3) that the prevailing party prevailed on the merits of the case.   (Elias Opp'n Br. pp.5, 6, 12–18.)

Elias is correct that the American Rule presumes that each litigant— successful or unsuccessful—will pay their own attorney's fees absent a statute or contract to the contrary.   *Med. Assocs. of Erie v. Zaycosky*, 77 F.4th 159, 162 (3d Cir. 2023).   Sanctions are an exception to this general rule when a party is willfully disobedient toward a court order or "has 'acted in bad faith, vexatiously, wantonly or for oppressive reasons.'"   *Cellco P'ship v. Data Find Sols., Inc.*, Case No. 06–00326, 2007 WL 1521075, at *3 (D.N.J. May 22, 2007) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).   The Court expressly so found in its summary judgment decision.   (May 28, 2025 Op. p.21.)

Elias provides minimal support for his positions and the authorities he cites all seem to deal with fee requests that had a statutory or contractual predicate.   Local Civil Rule 46(e) does not reference a statutory requirement for attorney's fees as Elias argues (Elias Opp'n Br. pp.12, 13) in no small part because there is no Local Civil Rule 46(e).   Again, the Court's inherent power to sanction exists separate and apart from any rule or statute.   *See Rorrer*, 564

F. App'x at 644–45.    Elias's threshold challenges to PNC's motion are therefore rejected and the Court moves to the lodestar analysis and related considerations.

### C.    The Lodestar

To repeat, the lodestar is calculated by multiplying a reasonable number of hours worked by a reasonable hourly rate.    *Simring*, 634 F. App'x at 857. The relevant rate is generally the prevailing rate in the forum of the litigation unless the special expertise of counsel from a distant district was required or local counsel were unwilling to take the case.    *Interfaith Cmty. Org. v. Honeywell Int'l., Inc.*, 726 F.3d 403, 413 (3d Cir. 2013).    The relevant rate for this Vicinage is that of the "Philadelphia/New Jersey legal market."    *Sciore v. Phung*, Case No. 19–13775, 2022 WL 17446505, at *3 (D.N.J. Dec. 6, 2022). Courts have been guided by Community Legal Services of Philadelphia's (CLS) fee schedule in determining the reasonable rate within the Vicinage.    *Id.*

I do not interpret Elias's challenges to the requested fees to be premised on the asserted rates and I independently find them reasonable.

PNC requests an hourly rate of $450 per hour for attorney Daniel J. Tobin and $400 per hour for attorney William P. Reiley.    (ECF No. 107–1 (PNC Mot. Exs.) pp. 3, 4.)    Tobin is a partner with 35 years of experience.    (*Id.* p. 4.)    His requested fee is well below the $735 to $850 range provided for attorneys with 25 or more years of experience in the CLS fee schedule.    *Attorney Fees*, Cmty. Legal    Servs.    of    Phila.,    https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited February 13, 2026).    Reiley is an attorney with 12 years of experience.    (PNC Mot. Exs. p. 3.)    His requested fee is below the $420 to $525 range for attorneys with 11 to 15 years of experience per the CLS fee schedule.    *Attorney Fees*, *supra.*

Moving to reasonable hours, PNC seeks fees for 131 total hours, 80 for Reiley and 51 for Tobin.    (PNC Mot. Exs. p. 5.)    Courts first determine the

number of reasonable hours expended by looking to the number of hours actually spent. *Simring*, 634 F. App'x at 857. Hours not reasonably expended—those that are excessive, redundant, or otherwise unnecessary—may be excluded. *Id.* PNC has provided a detailed accounting of the hours expended with the date, attorney, time spent to the tenth of an hour, rate, total fee, and brief description for each entry. The bulk of these entries include drafting filings and correspondences, reviewing Elias's submissions and court orders, and collaborating and communicating with the client and fellow attorneys. (PNC Mot. Exs. pp.14–27.) The Court does not identify any excessive, duplicative, or otherwise unnecessary entries in its review of PNC's invoice summary.

Elias makes two general attacks on the hours sought. First, he identifies $13,215 for a duplicative court appearance and entries that he characterizes as mere communications between attorneys. To the extent that Elias challenges these hours because the invoice summary includes redactions, billing records need only be detailed enough for the Court to determine whether the time expended was reasonable for the work performed. *See Rastelli Partners, LLC v. Baker*, Case Nos. 23–02967 & 23–03126, 2024 WL 960485, at *11 (D.N.J. Mar. 6, 2024). While redactions may obscure the exact topics researched or discussed in a communication, the Court is satisfied that the time expended itself was reasonable for these general activities.

Elias specifically challenges a $1,080 entry, Reiley's fee for the September 16, 2024 motion hearing for which Tobin also charged for preparation and attendance. (PNC Mot. Exs. p.25; Elias Opp'n Br. p.11.) This hearing was held after my first warning to Elias and suggestion that he confer with PNC's counsel or a mediator. (July 15, 2024 Hr'g Tr. pp.21:18–22:7.) It is common in the Court's experience for multiple attorneys to attend a hearing, particularly one in which arguments are to be exchanged for dispositive motion

practice.   *See Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 604 (D.N.J. 1998) (rejecting the defendant's argument that fees for three attorneys to attend a mediation, settlement conferences, and motion hearings were excessive); *see also Qorvo, Inc. v. Akoustis Techs., Inc.*, Case 21–01417, 2024 WL 5165155, at *6 (D. Del. Sept. 9, 2024) (finding that the plaintiff did not overstaff depositions by assigning two attorneys).   This time will not be reduced.

Elias's additional specific challenges relating to "internal communications among attorneys" are not even all mere communications.   For instance, one flagged entry is for "[a]ttention to editing and drafting of memo in support of summary judgment to address comments from Counsel."   (PNC Mot. Exs. p.22.)   Elias also challenges correspondences that contributed to PNC's motion for summary judgment, such as in the preparation of PNC's certification and statement of material facts.   (*Id.* p.23.)   Insofar as the challenged time consists of correspondences to PNC and conversations among attorneys, the Court finds that these instances were brief, often just a few minutes at a time. While Elias may intend to use "internal communications among attorneys" derisively, the practice of law is inherently communicative.   *See Holzhauer v. Hayt, Hayt & Landau, LLC*, Case No. 11–02336, 2012 WL 3286059, at *8 (D.N.J. Aug. 10, 2012) (declining to strike intra-office communications from the lodestar calculation).

All of these communications took place after Elias was disqualified and many occurred after the Court's first warning that it would consider sanctions. Elias not only prolonged this litigation after it was no longer advisable to do so, he continued to make motions and other filings—many of them unsuccessful if not ultimately withdrawn—that he should have understood would result in time expended for review, collaboration with counsel, client updates, and responsive filings that are common in the practice of law.   Elias may now look

10

at PNC's invoice summary as a pages-long receipt.   But if the bill appears steep, Elias must take responsibility for running up the tab.

Second, and more generally, Elias claims that a review of the invoice summary does not show any significant time spent on the merits of individual asserted claims, but rather technical issues such as standing.   (Elias Opp'n Br. pp. 29–32.)   To the extent that this argument is separate from Elias's prerequisite argument above, it is difficult to determine how Elias arrived at his assertion.   The invoice summary does not parse out time spent on merits arguments versus standing or procedural arguments. PNC's counsel confirmed during the July 15, 2024 status conference that its theory of the case was that PNC could not be liable for payments authorized by Elias.   (July 15, 2024 Hr'g Tr. p. 19:4–12.)   PNC's brief supporting summary judgment asserted arguments including lack of standing, equitable estoppel, laches, and the undisputed fact that Elias and Cynthia authorized the payments to the home equity line of credit.   (PNC Summ. J. Br. pp. 13–24.)   Upon concluding that Elias was prohibited from proceeding *pro se* as trustee and failed to establish standing for his individual claim, the Court had no reason to delve further into PNC's arguments.   (*See* May 28, 2025 Op. pp. 10–15.)

The defendants in *Eckert v. Chauffeurs, Teamsters and Helpers Local Union 776 Profit Sharing Plan* contended that hours expended on a claim plaintiffs succeeded on through procedural grounds ought to have been excluded from the fee award.   Case No. 15–01920, 2018 WL 4404657, at *8 (M.D. Pa. Sept. 17, 2018).   The court declined to do so, concluding that the plaintiffs achieved substantial relief and fully litigated their claims without regard to how the Court would choose to rule.   *Id.*

Similar here, the majority of PNC's arguments centered on the notion that Elias was responsible for harm alleged and—unwilling to allow himself to be sued—decided to come after PNC for allowing him transfer the funds.   PNC

11

achieved the outcome desired: dismissal of plaintiffs' claims.  The Court will not hold against PNC its own decision to analyze no further than Elias's inability to press Trust-related claims and lack of standing to assert others. Fees will not be reduced simply because the Court did not need to look to the merits to dispose of the case.

Finally, in addition to the $54,950 in requested fees, PNC seeks $1,774.66 in costs.   Many of these costs consist of transcript purchases, delivery service, and moderate travel.   (PNC Mot. Exs. p.27.)   The Court finds these costs to be reasonable with the exception of PNC's $855 mediation fee and Tobin's $275.01 *pro hac vice* admission.   Though the admission fee was not paid until January 30, 2025 (*id.*), Tobin applied for admission on November 20, 2023 (ECF No. 29) and was granted admission on January 2, 2024 (ECF No. 35), both before Elias was disqualified.   Further, the Court appointed the mediator in this case pursuant to Local Civil Rule 301.1.   (ECF No. 100.)   Under Local Civil Rule 301.1, "compensation shall be borne equally by the parties."   L. Civ. R. 301.1(c).   The Court will therefore deduct $1,130.01 from PNC's requested costs.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that PNC has supported its request for fees and costs and Elias has failed to adequately rebut their presumptive reasonableness.   PNC's motion at ECF No. 107 will therefore be **GRANTED** as adjusted and $54,950 in attorney's fees and $644.65 in costs will be awarded.   An appropriate order and judgment accompanies this opinion.

/s/ *Edward S. Kiel*

**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated:  February 23, 2026